IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE HAGER,                          )
                                          )
          Plaintiff,                      )
                                          )
     vs.                                  ) Civil Action No. 09-1267
                                          )
COMMISSIONER OF SOCIAL                    )
SECURITY,                                 )
                                          )
          Defendant.                      )

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff, Christine Hager, seeks judicial review of a
decision of defendant, Commissioner of Social Security ("the
Commissioner"), denying her application for disability insurance
benefits ("DIB") under Title II of the Social Security Act, 42
U.S.C. §§ 401-433.[1]  Presently before the Court are the parties'
cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.
For the reasons set forth below, Plaintiff's motion for summary
judgment will be granted and the Commissioner's cross-motion for
summary judgment will be denied.

---

[1]Title II of the Social Security Act provides for payment of
insurance benefits to disabled individuals who have contributed
to the Social Security Program through past employment.
Plaintiff's earnings record shows that she acquired sufficient
quarters of coverage for purposes of eligibility for DIB to
remain insured through December 31, 2011.  (R. 10, 162).

**II.  PROCEDURAL HISTORY**

Plaintiff protectively filed an application for DIB on June 12, 2007, alleging disability since May 15, 2006 due to a low back injury, depression, anxiety and a thyroid condition.[2]  (R. 125-33, 177).  Following the denial of her application, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 65-66).  Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing, which was held on February 6, 2009.  (R. 21-52).

On March 23, 2009, the ALJ issued a decision denying Plaintiff's application for DIB based on his conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.[3]  (R. 10-20).  Plaintiff requested review of the ALJ's decision.  (R. 6).  However, the request was denied by the

---

[2]In order to establish a disability under the Social Security Act, a claimant must demonstrate an inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 423(d)(1).  A claimant is considered unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A).

[3]The Social Security Regulations define RFC as the most a disability claimant can still do despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a).

2

Appeals Council on July 21, 2009.  (R. 1-5).  This appeal
followed.[4]

## III. BACKGROUND

Plaintiff's date of birth is December 20, 1963.  Plaintiff
is 5'5½" tall and, at the time of the hearing before the ALJ, she
weighed 220 pounds.  With respect to education, Plaintiff is a
high school graduate.  (R. 26-28).  In the past, Plaintiff has
been employed as a kitchen helper (1992 to 1998), a cashier in a
hardware store (1998 to 2000) and a processor for a sporting
goods company (2000 to May 15, 2006).  Plaintiff has not worked
in a full-time position since May 15, 2006, when she sustained a
work-related low back injury.  (R. 177-78).

During the hearing, Plaintiff testified that the most
significant problems limiting her ability to work are back pain
which radiates into her left hip and lower leg, depression and
anxiety.  On a scale of 1 to 10, Plaintiff rated the severity of
her pain "most of the time" as a 4 or a 5.  (R. 29-30).
Plaintiff testified that she uses a cane for support when
walking, and that the cane was prescribed by one of her treating
physicians.  (R. 31).

---

[4]The Court has jurisdiction of this appeal under 42 U.S.C.
§ 405(g), which provides that an individual may obtain judicial
review of any final decision of the Commissioner by bringing a
civil action in the district court of the United States for the
judicial district in which the individual resides.

Plaintiff's counsel provided the ALJ with an updated medication list during the hearing. At that time, Plaintiff was taking the following medications: Voltaren 75 mg. (2x/day for arthritic pain); Combunox 400 mg. (2x/day as needed for pain); Motrin 800 mg. (3x/day for pain); Skelaxin 800 mg. (3x/day as needed for muscle spasms); Prozac 30 mg. (1x/day for depression); Trazodone 100 mg. (1 pill at night for sleep); Ativan 0.5 mg. (1x/day as needed for anxiety); Synthroid 125 mcg. (1x/day for thyroid); and Pepcid 20 mg. (2x/day for GERD). (R. 222). With respect to side effects, Plaintiff testified that the Combunox makes her sleepy.[5] (R. 32).

The medical evidence in the administrative record includes the following:

(1) records of Westmoreland Hospital for an emergency room visit on May 15, 2006 following Plaintiff's injury at work (R. 457-64, 598-600);

(2) records of Pamela Gianni, M.D., a physician for the Workmen's Compensation carrier, relating to an evaluation on May

---

[5]Combunox is a combination of Oxycodone and Ibuprofen. Oxycodone is prescribed to relieve moderate to severe pain. Oxycodone is in a class of medications called opiate (narcotic) analgesics. It works by changing the way the brain and nervous system respond to pain. The possible side effects of Oxycodone, which can be habit-forming, include drowsiness. See www.nlm.nih.gov/medlineplus/druginfo (last visited on 5/3/2010).

16, 2006 and follow-up visits on May 23, 2006 and May 30, 2006
(R. 229-34);

(3) records of Keystone Rehabilitation Systems for physical
therapy sessions between May 18, 2006 and January 25, 2007 (R.
264-316);

(4) reports of MRIs on May 23, 2006 (lumbar spine), January
19, 2007 (lumbar spine), February 12, 2007 (pelvis) and October
14, 2008 (lumbar spine) and a whole body bone scan on July 5,
2006 (left joint pain) (R. 430-32, 440-41, 447-48, 676);

(5) records of Steven Mills, M.D., Plaintiff's family
physician, for treatment rendered between May 26, 2006 and
November 14, 2008 (R. 391-411, 661-74);

(6) records of Andrew M. Stroh, M.D., a physician for the
Workmen's Compensation carrier, for treatment rendered between
June 7, 2006 and March 29, 2007 (R. 245-48, 531, 533-35, 540-41,
545-46, 548-58, 560-61);

(7) records of Bompiani Chiropractic Clinic for treatment
rendered between June 9, 2006 and June 23, 2006 (R. 235-43);

(8) records of Westmoreland Regional Hospital for injections
administered on June 26, 2006 (left SI joint), August 24, 2006
(lumbar spine), December 21, 2006 (left SI joint), February 1,
2007 (left SI joint), September 19, 2007 (right and left knees),
February 5, 2008 (right and left knees), May 22, 2008 (right and
left knees), January 9, 2009 (lumbar spine) and January 27, 2009

(right knee) and rhizotomies on November 7, 2006 (lumbar vertebral medial branch nerves) and March 20, 2007 (left SI joint) (R. 466, 471, 476, 482, 486, 492, 710-11, 727, 735, 745);[6]

(9) records of aquatic therapy sessions between July 26, 2006 and August 16, 2006 (R. 249-55);

(10) records of Brinda Navalgund, M.D. and Rodney Dayo, D.O. for pain management treatment between August 8, 2006 and January 27, 2009 (R. 256-63, 336-38, 345-47, 468-70, 484-85, 497-511, 529, 705-09, 712-16, 717-26, 728-35, 737-40);

(11) a physiatric consultation report prepared by Arthur T. Androkites, M.D. on November 30, 2006 following an examination of Plaintiff (R. 318-20);[7]

(12) records of Barclay Rehabilitation for physical therapy sessions in December 2006 (R. 321-35);

(13) the report of an evaluation of Plaintiff by William F. Donaldson, III, M.D., an orthopedic surgeon, on January 17, 2007 (R. 431-39);[8]

---

[6]A rhizotomy is an operation for pain in which a nerve close to the spinal cord is cut.

[7]Plaintiff was referred to Dr. Androkites by Dr. Stroh, a physician for the Workmen's Compensation carrier of Plaintiff's employer at the time of the low back injury.  After examining Plaintiff, Dr. Androkites diagnosis was mechanical low back pain, and he referred Plaintiff for flexion-based physical therapy.

[8]Based on Plaintiff's physical examination and a review of her x-ray, MRI and bone scan results, Dr. Donaldson opined that she was not a candidate for surgery.  However, the doctor ordered a repeat MRI scan to determine whether Plaintiff may have an

(14) the report of a functional capacity evaluation of
Plaintiff by a physical therapist on July 19, 2007 (R. 601-06);

(15) records of WRH Comprehensive Counseling Center for
mental health treatment between June 7, 2007 and December 30,
2008 (R. 607-13, 677-704);

(16) a Physical RFC Assessment completed by a State agency
physician on October 30, 2007 (R. 571-77);

(17) a Mental RFC Assessment and Psychiatric Review
Technique Form completed by a State agency psychological
consultant on October 31, 2007 (R. 640-56); and

(18) answers to interrogatories directed to Brinda
Navalgund, M.D. dated February 9, 2009 (R. 765-67).

## IV. ALJ'S DECISION

When presented with a claim for disability benefits under
the Social Security Act, an ALJ must follow a sequential
evaluation process.  See 20 C.F.R. § 404.1520(a)(4).  The process
was described by the United States Supreme Court in Sullivan v.
Zebley, 493 U.S. 521 (1990), as follows:

*   *   *

Pursuant to his statutory authority to implement the SSI
Program, (footnote omitted) the Secretary has promulgated

_____

evolving disc herniation causing left-sided leg pain.  The MRI,
which was performed on January 19, 2007, showed a small central
disc herniation at L5-S1.  (R. 430-32).  Based on the result of
the repeat MRI, Dr. Donaldson informed Plaintiff that "surgery
really was not in her best interests."  (R. 434).

regulations creating a five-step test to determine whether an *adult* claimant is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). (footnote omitted).  The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work.  See 20 C.F.R. §§ 416.920(a) through (c)(1989).  In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work.  See 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A)(1989).  If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry.  § 416.920(d).  If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps.  At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience.  If the claimant cannot do his past work or other work, he qualifies for benefits. §§ 416.920(e) and (f).

*    *    *

493 U.S. at 525-26.

The claimant bears the burden of establishing steps one through four of the sequential evaluation process.  At step five, the burden shifts to the Commissioner to consider "vocational factors" (the claimant's age, education and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in light of his or her RFC.  See Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir.2004).

With respect to the ALJ's application of the five-step sequential evaluation process in the present case, steps one and two were resolved in Plaintiff's favor: that is, the ALJ found

8

that Plaintiff had not engaged in substantial gainful activity

since her alleged onset date of disability,[9] and the medical

evidence established that Plaintiff suffers from the following

severe impairments: lumbosacral strain, degenerative disc disease

of the lumbar spine, sacroiliitis, neuritis, radiculitis,

osteoarthritis of the knees, chronic pain syndrome with physical

and psychological components and depression.  (R. 12).  Turning

to step three, the ALJ found that Plaintiff's impairments were

not sufficiently severe to meet or equal the requirements of any

impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  (R.

14).  Before continuing on to step four, the ALJ assessed

Plaintiff's RFC, concluding that Plaintiff retained the RFC to

perform sedentary work with the following limitations:[10] (1) no

climbing of ladders, ropes or scaffolds; (2) only occasional

climbing of ramps and stairs; (3) only occasional balancing,

kneeling, stooping and crouching; (4) no crawling; (5) no

---

[9]After the alleged onset date of disability in this case,
Plaintiff held a job as a ticket seller at a motor speedway.  In
that job, which was seasonal, Plaintiff worked 4 hours on
Fridays.  (R. 28).  As a result, it does not qualify as
substantial gainful activity which requires the ability to do
sustained work-related physical and mental activities in a work
setting on a regular and continuing basis.

[10]"Sedentary work involves lifting no more than 10 pounds at
a time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools.  Although a sedentary job is
defined as one which involves sitting, a certain amount of
walking and standing is often necessary in carrying out job
duties."  20 C.F.R. § 404.1567(a).

exposure to extreme cold or hazards such as heights and dangerous machinery; (6) the need for a sit/stand option with sitting for no more than 45 minutes at a time and standing for no more than 15 minutes at a time; (7) the need to use a cane when standing and walking; and (8) work involving no more than simple instructions and only occasional interaction with the public. (R. 15). In light of Plaintiff's RFC, the ALJ found at step four that Plaintiff is unable to perform any of her past relevant work. (R. 18). Finally, at step five, based on the testimony of the VE, the ALJ found that considering Plaintiff's age, education, past work experience and RFC, there were a significant number of jobs in the national economy at the sedentary exertion level which Plaintiff could perform, including the jobs of a sorter, a film inspector and a surveillance system monitor. (R. 19-20).

## V. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence, which has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It consists of something more than a mere scintilla, but something less than a preponderance. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir.1979). Even if the Court would have

10

decided the case differently, it must accord deference to the
Commissioner and affirm the findings and decision if supported by
substantial evidence.  <u>Monsour Medical Center v. Heckler</u>, 806
F.2d 1185, 1190-91 (3d Cir.1986).

**VI. DISCUSSION**

Competitive employment requires the ability to work on a
regular and continuing basis, *i.e.*, 8 hours a day, 5 days a week.
*See* Social Security Ruling 96-8p.[11]  On February 9, 2009, Dr.
Brinda Navalgund, one of Plaintiff's treating physicians,
responded to interrogatories directed to her by Plaintiff's
counsel.[12]  With respect to the issue of competitive employment,
Dr. Navalgund opined that Plaintiff would not be able to work an
8-hour day or 5 days a week on a consistent basis.  Dr. Navalgund
based this opinion on Plaintiff's inability to take pain
medication during the work day due to the side effect of fatigue;
Plaintiff's limited activity tolerance, *i.e.*, "a couple of

---

[11]Social Security Rulings are agency rulings published "under
the authority of the Commissioner of Social Security" and "are
binding on all components of the Social Security Administration."
<u>Sykes v. Apfel</u>, 228 F.3d 259, 271 (3d Cir.2000).

[12]Dr. Navalgund began treating Plaintiff for radiating back
pain on August 8, 2006, three months after her work-related
injury, and she continued to treat Plaintiff on a monthly or bi-
monthly through the date of the hearing before the ALJ.

hours"; and Plaintiff's need to use a cane to ambulate.[13]   (R.
766-67).

The ALJ rejected Dr. Navalgund's opinion that Plaintiff
could not engage in competitive employment, choosing, instead, to
give "great" weight to the opinions of (a) a non-examining State
agency physician who completed a Physical RFC Assessment on
October 30, 2007, finding that, despite her degenerative disc
disease, Plaintiff could perform sedentary work (R. 571-77); (b)
a non-examining State agency psychological consultant who
completed a Mental RFC Assessment on October 31, 2007, finding
that, despite her depression and anxiety, Plaintiff could meet
the basic mental demands of competitive work on a sustained basis
(R. 640-55); (c) the physical therapist who performed a
functional capacity evaluation of Plaintiff on July 19, 2007 and
stated that she qualified for the "sedentary" physical demand
classification (R. 601-06); and (d) Dr. Stroh, a treating
physician for the Workmen's Compensation carrier, who noted on
March 1, 2007 that Plaintiff could perform light duty work (R.
541).

---

[13]Dr. Navalgund also opined in her answers to the
interrogatories that, due to pain and fatigue, Plaintiff would
need more than the usual number of breaks provided by an employer
during the work day (a break in the morning, a lunch break and an
afternoon break).   (R. 767).

Plaintiff asserts that the ALJ erred by failing to give controlling weight to Dr. Navalgund's opinion that she could not engage in competitive employment.  The Court agrees.

Generally, in Social Security disability cases, more weight is given to the opinions of a claimant's treating sources.  *See* 20 C.F.R. § 404.1527(d)(2); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000)(quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999))(An ALJ should give "treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'").

In some cases, a treating source's medical opinion regarding a claimant's work-related limitations is entitled to controlling weight: that is, the ALJ must adopt the treating source's opinion.  *See* 20 C.F.R. § 404.1527(d)(2).  To be entitled to controlling weight, an opinion (a) must be rendered by a treating source; (b) must be a "medical opinion," which is an opinion about the nature and severity of a claimant's impairments; (c) must be well-supported; and (d) even if well-supported, must not be inconsistent with other substantial evidence in the administrative record.  *See* Social Security Ruling 96-2p.  Each of these requirements is met with respect to Dr. Navalgund's opinion.

13

First, Dr. Navalgund, a pain management specialist, is a long-time treating source. Dr. Navalgund began treating Plaintiff for her radiating back pain on August 8, 2006, less than three months after the work-related injury, and she continued to treat Plaintiff on a monthly or bi-monthly basis through the date of the administrative hearing on February 6, 2009.[14]

Second, Dr. Navalgund's answers to counsel's interrogatories specifically address the nature and severity of Plaintiff's impairments and their impact on her ability to perform work activities on a regular and continuing basis. Thus, the answers constitute a "medical opinion."

Third, Dr. Navalgund's opinion is well-supported by the extensive medical evidence in the administrative record. As Dr. Navalgund noted in her answers to the interrogatories: (a) over time, Plaintiff has tried numerous treatment modalities to alleviate her pain including SI joint injections, rhizotomy, transforaminal epidural injections, narcotics, NSAIDs and muscle relaxers; (b) the results of an MRI of Plaintiff's lumbar spine

---

[14]The Court further notes that because Dr. Navalgund is a specialist, her opinion is entitled to even more weight than the opinion of a treating source who is not a specialist. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

14

in October 2008 showed a disc protrusion at the L5-S1 level of Plaintiff's spine, as well as degenerative changes of facet joints; and (c) Plaintiff's clinical examinations revealed increased pain with facet loading on the left side, tenderness upon palpation of the left lumbar paraspinal muscles, tenderness upon palpation of the left SI joint and ambulation favoring Plaintiff's left leg.

Finally, Dr. Navalgund's opinion is not inconsistent with other substantial evidence in Plaintiff's administrative record. Since Plaintiff's work-related injury on May 15, 2006, she has been referred by physicians for the Workmen's Compensation carrier for physical therapy on multiple occasions, chiropractic manipulation and aquatic therapy, as well as physiatric, orthopedic and pain management consultations; Plaintiff has been prescribed narcotics for pain by every treating physician; MRIs on May 23, 2006 and February 12, 2007 showed the presence of degenerative disc disease and posterior bulging of the disc at the L5-S1 level of Plaintiff's spine; a whole body bone scan on July 5, 2006 revealed evidence that Plaintiff favored her left lower extremity which is consistent with the observations of treating and examining sources that Plaintiff's gait was antalgic due to radiating back pain; the records of Dr. Mills, Plaintiff's family physician, reflect consistent complaints of, and treatment for, chronic lumbar back pain and depression between May 26,

15

2006, shortly after the work-related injury, and November 7, 2008, shortly before the ALJ hearing; and a psychiatrist who evaluated Plaintiff's complaints of depression and anxiety on July 30, 2007 opined that she suffers from chronic pain syndrome with physical and psychological components.[15]

Further, two of the opinions which the ALJ accorded great weight in denying Plaintiff's application for DIB actually provide support for Dr. Navalgund's opinion regarding Plaintiff's inability to engage in competitive employment. The physical therapist who performed the functional capacity evaluation of Plaintiff on July 19, 2007 did state in his report that "[t]he patient currently qualifies for 'Sedentary' physical demand classification," as noted by the ALJ. However, the ALJ failed to acknowledge the physical therapist's following remarks in the same report: "Her performance during today's test with difficulty with lumbar motion and exertion would make her tolerance of an 8 hour day *questionable* in light of the results we have observed" and "[s]he *may* tolerate sedentary work or counter level work

---

[15]In his report, the psychiatrist rated Plaintiff's level of functioning on the Global Assessment of Functioning Scale a 50 which denotes "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job). American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision, at 34 (bold face in original).

16

where she does not have to bend or lift objects on a regular basis" (emphasis added)(R. 603).[16]  Similarly, Dr. Stroh did indicate on March 1, 2007 that Plaintiff was restricted to light duty work as noted by the ALJ.[17]  But the ALJ failed to acknowledge that in the same note, Dr. Stroh further restricted Plaintiff to working 4 hours a day which does not satisfy the requirements of competitive employment.[18]  (R. 540).  The ALJ's failure to fairly analyze these opinions is impermissible.

In sum, in light of (a) Plaintiff's long treatment history with Dr. Navalgund, (b) the fact that Dr. Navalgund is a pain management specialist, (c) the abundant medical evidence in the

---

[16]Significantly, the physical therapist noted that Plaintiff was cooperative throughout the functional capacity evaluation and appeared to have performed in a reliable manner.

[17]In June 2006, Dr. Stroh diagnosed Plaintiff with left SI joint pain and dysfunction.  Subsequently, his diagnoses included left lumbar strain and left piriformis strain and tendonitis.  In an effort to alleviate Plaintiff's pain, Dr. Stroh prescribed narcotics for Plaintiff; administered steroid injections to Plaintiff's left SI joint and left piriformis tendon; referred Plaintiff for chiropractic treatment, physical therapy and aquatic therapy; ordered diagnostic tests including an x-ray, a bone scan and a pelvic MRI; referred Plaintiff to a pain management center where she underwent facet joint blocks and two surgical procedures; referred Plaintiff to a physical medicine rehabilitation specialist for a consultation; and recommended that Plaintiff ask her family physician for a referral to a mental health specialist to adjust her medication for depression.

[18]The Court also notes that Dr. Stroh continued to restrict Plaintiff to light duty work for 4 hours a day through March 29, 2007, the last note of an office visit with Plaintiff in the administrative record.

17

administrative record supporting Dr. Navalgund's opinion that
Plaintiff could not engage in competitive employment, (d) the
absence of an opinion by another treating source specifically
addressing the issue of Plaintiff's ability to work on a
sustained basis despite her pain and fatigue, (e) the failure of
the ALJ to acknowledge the entirety of the opinions rendered by
Dr. Stroh and the physical therapist, (f) the fact that the two
remaining opinions on which the ALJ relied to deny Plaintiff's
application for DIB were rendered by a non-examining State agency
physician and a non-examining State agency psychological
consultant, (g) the fact that the extensive administrative record
does not contain a single notation by any of Plaintiff's treating
and examining sources calling into question the credibility of
her complaints of disabling back pain, and (h) case law holding
that subjective complaints of pain should be given great weight
when supported by medical evidence,[19] the Court concludes that
the ALJ erred in failing to accord controlling weight to Dr.
Navalgund's opinion.  Therefore, the decision of the ALJ is

---

[19]See Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir.1985).

18

reversed and the Commissioner is directed to award DIB to

Plaintiff.[20]

William L. Standish
United States District Judge

Date: May 4, 2010

---

[20]Plaintiff raised three arguments in support of her motion for summary judgment. Because the first argument is dispositive, her alternative arguments will not be addressed.

19